250 So.2d 368

**Billie WHITE d/b/a Telephone Answering Bureau of Lafayette, Louisiana,**

v.

**LOUISIANA PUBLIC SERVICE COMMISSION. (Consolidated)**

Nos. 50950, 50951.

June 28, 1971.

Voorhies, Labbe, Fontenot, Leonard & McGlasson, Patrick A. Juneau, Jr., Lafayette, for plaintiff-appellant.

Joseph H. Kavanaugh, Marshall B. Brinkley, Baton Rouge, for defendant-appellee.

Kibbe, Cooper & Sonnier, Charles R. Sonnier, Abbeville, for intervenor.

BARHAM, Justice.

This is an appeal, under Louisiana Constitution Article 6, Section 5, and Article 7, Section 10(3), by Telephone Answering Bureau of Lafayette, Louisiana, from judgments of the Nineteenth Judicial District Court affirming orders of the Louisiana Public Service Commission.

The Public Service Commission was granted authority to regulate radio common carriers by acts of 1968, now R.S. 45:-1500–1504. Pursuant to that authority the Commission in 1968 issued a certificate of public convenience and necessity to Telephone Answering Bureau of Lafayette, Louisiana, authorizing domestic public land mobile radio service. Telephone Answering Bureau began operating radio common carrier service under this authorization in an area around the City of Lafayette for a radius of approximately 30 miles. Included in and near the outer limits of this area were the cities of Opelousas, Crowley, Abbeville, and New Iberia.

The matters before the district court and before us involve two "applications" to and two orders by the Commission. Telephone Answering Bureau's suits and its appeals here involve both orders.

In the Commission's record, Docket No. 10359, the first filing is a letter received

by the Commission on November 12, 1968, on the stationery of "Radiofone", which states:

"We would like to apply for an amendment to our Certificate of Public Convenience and Necessity number RCC–5 to include base stations [1] on the 450 mc Band to be placed in New Iberia, Abbeville, Crowley, and Opelousas, Louisiana, which will be controlled in Lafayette, Louisiana.

"These base stations are within our existing service area which is an addition to our present system which will enable us to better serve our existing customers in these areas.

"We propose to give our existing and future customers local telephone intraconnection in these areas.

> "Sincerely
> s/d "C. J. Singler
> "C. J. Singler"

The next filing is a copy of a notice of hearing issued by the secretary of the Commission styled as follows:

"DOCKET NO. 10359—Telephone Answering Bureau—(Lafayette, Louisiana) Ex Parte. In re: Amendment to Certificate No. RCC–5 to include base stations in New Iberia, Abbeville, Crowley, and Opelousas,

---

1. Base stations would be maintained in the four cities by telephone connection with South Central Bell. This would permit direct calling and eliminate long distance charges to the users of the service of the radio common carrier in these four base cities and Lafayette over the entire area. The base stations additionally would make paging service available in the cities where located.

Louisiana, which will be controlled by the present base station in Lafayette, Louisiana."

No petition, no application, no similar pleading can be found in this record. Moreover, the letter to the Commission does not name Telephone Answering Bureau as an applicant or a party to any proceeding before the Commission. Although four opponents appeared at the Commission's hearing under its Docket No. 10359, only one opposition is filed in the record, that by Vermilion Mobil, Inc. The letter, the copy of the notice of hearing, and the one opposition are the entire record, all the pleadings, which initiated and apparently controlled the hearing later conducted.

In the record of the Commission under its Docket No. 10372, there is a letter received on December 2, 1968, by the Commission on the stationery of Vermilion Mobil, Inc., which states:

"We respectfully request to be placed on the docket of the next hearing before the Commission for the purpose of showing the need for a mobil two-way radio system in Vermilion Parish with a control point in Abbeville, Louisiana.

"Your consideration of our request and reply at your earliest convenience will be greatly appreciated.

"Very truly yours,
s/d "Patricia A. Thomas
"Patricia A. Thomas
"President"

The next filing under that docket number is a notice of hearing issued by the secretary, which is styled as follows:

"DOCKET NO. 10372—Vermilion Mobil, Inc.—(Abbeville, Louisiana) Ex Parte. In re: Application for Certificate of Convenience and Necessity for Radio Common Carrier Service in the Abbeville, Louisiana, area with transmitter location approximately thirty air miles southsouthwest of Abbeville, Louisiana, and control location at 415 East Lafayette Street, Abbeville, Louisiana."

There is no petition, no application, no other similar pleading in the record. It will be noted that no facts are set forth in the letter which would support a request for a certificate of convenience and necessity for a radio system and that no proposal is made for the site of the transmitter. It is the location of the transmitter which largely controls the extent of the area serviced. However, from some source and in some manner the notice of hearing has supplied a location of the transmitter for the so-called application. There is an opposition filed by Kaplan Telephone Company; however, the principal, if not the only, opponent appearing at the hearing in Docket No. 10372 is Telephone Answering Bureau of Lafayette. The letter, the hearing notice, and the one opposition make up the total record for initiating and controlling the hearing later held in Docket No. 10372.

Apparently Docket No. 10359, Telephone Answering Bureau, was consolidated with several applications for radio common carrier authority, some in the Abbeville area and some in areas totally removed from that area. Although at the very beginning of the testimony taken in Docket No. 10372 the chairman of the Commission determined that only the applicant, Vermilion Mobil, and one opponent, Telephone Answering Bureau, were before the Commission, the witnesses who were called were subjected to examination and cross-examination by attorneys for three parties *strangers* to the docketed case. Moreover, more than one-third of the transcript is given over to the examination of an expert witness not called by either Vermilion Mobil or Telephone Answering Bureau, but who in fact was the expert witness for another party who had made separate application for service in the Abbeville area. The Commission apparently called this witness. It is most difficult in our review of the records before us to ascertain the evidence pertinent to the matters on appeal and to the parties before us.

With total absence of notice pleadings, with no delineation of matters to be considered at the hearings or the basis for conducting the hearings, and on sparse records in both of these matters, the Commission granted Telephone Answering Bureau base stations in Crowley, New Iberia, and Opelousas but denied it a base station in Abbeville, and issued an order approving Vermilion Mobil's "application" for radio service for the Abbeville area.

Telephone Answering Bureau asked for rehearing in both matters. The records before us reflect that a rehearing was granted as to the order authorizing Vermilion Mobil to give radio service to the Abbeville area. On rehearing the order was reinstated by a two-one vote of the Commission.

R.S. 45:1192 provides that a party dissatisfied with a decision of the Public Service Commission may appeal by filing a suit against the Commission in the district court of its domicile. By way of appeal from the order denying it a base station in Abbeville and from the order granting Vermilion Mobil radio common carrier authority in the Abbeville area, Telephone Answering Bureau filed suits against the Public Service Commission in the Nineteenth Judicial District Court. Vermilion Mobil intervened in the suits. The district court affirmed both orders. We reverse the trial court and the Public Service Commission.

First, we are required to reverse the trial court judgment because the court received into evidence depositions of a number of witnesses which had never been received or considered by the Commission in its determination in these matters. The introduction of new evidence is controlled

by R.S. 45:1194, which reads: *"If, upon the trial of any suit brought to contest any decision, act, rule, rate, charge, classification, or order, of the commission, the plaintiff introduces evidence which is found to be different from that offered upon the hearing before the commission, or additional thereto, the court, before proceeding to render judgment, unless the parties to such action stipulate in writing to the contrary, shall send a transcript of such evidence to the commission, and stay proceedings in the suit for fifteen days* from the date of such transmission. Upon the receipt of the transcript, the commission shall consider the evidence, and it may alter, modify, amend, or rescind its decision, act, rule, rate, charge, classification or order, complained of in the suit and shall report its action to the court within fifteen days from the receipt of the transcript." (Emphasis supplied.)

 There is no written stipulation between the petitioner, Telephone Answering Bureau, and the Commission that the new evidence could be considered without a remand for the Commission's considera-

tion.[2] Ordinarily, review of administrative rulings does not even allow the trial court or this court to make independent *findings* of fact where there are findings of fact in the record, unless there is a showing that the findings of fact were arbitrary and unreasonable and made without substantial evidence. Moreover, new facts are not ordinarily received by courts for an independent determination on purely administrative adjudications. In Alabama Public Service Commission v. Southern Railway Company, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002, the Supreme Court made the broad statement that " * * * it is now settled that a utility has no right to relitigate factual questions on the ground that constitutional rights are involved".

Administrative boards such as the Public Service Commission are the primary fact-finders. Many jurisdictions have adopted the "substantial evidence rule" for limiting the scope of judicial review. Only in exceptional cases is new evidence admissible in a trial court on review of an adjudication made after a hearing before an administrative board. It is a non-judicial function to fix rates, issue licenses, and

2. On the face of a record filed in the district court June 29, 1970, appear the stamped "Filed in Evidence Exhibit Joint Offering—1" and the signature of a deputy clerk. This offering contains the depositions of seven witnesses. The attorneys for both applicants (appellant and intervenor in these suits) as well as the Public Service Commission (defendant) have by stipulation filed in this court a copy of the depositions of two witnesses because the original depositions filed in the district court have been lost. We would assume the same filing information would have appeared upon the original of that offering. No written stipulation between the parties, as required by R.S. 45:1194, appears on the offering or in the record from the district court.

grant certificates of authority. Where the Legislature has regulated business and activities, it has assigned these duties to administrative boards and agencies. Moreover, it would unduly burden the courts to require them to function in a purely legislative or executive capacity. Indeed, our restraint in acting only as a judicial reviewing body maintains the essential separation of powers in this field. See 2 Cooper, State Administrative Law, Chapt. XIX (1965); 4 Davis, Administrative Law Treatise, Chapt. 29 (1958).

The trial court acted contrary to statute and the Constitution in permitting the introduction of new evidence without requiring an explicit stipulation of all parties, particularly the Commission, that the new evidence would not have to be resubmitted to the Commission before the trial court could adjudicate the issue.

■ We also find merit in appellant's contention that the Commission erred by not complying with R.S. 45:1503C, which provides: "The commission shall not grant a certificate for a proposed radio common carrier operation or extension thereof which will be in competition with or duplication of any other radio common carrier unless it shall first determine that the existing service is inadequate to meet the reasonable needs of the public and that the person operating the same is unable to or refuses or neglects after hearing on rea-

sonable notice to provide reasonable adequate service."

Relying on this provision, appellant argues that since there would be competition and duplication of service if Vermilion Mobil is also granted a certificate to service the Abbeville area, the Commission, before granting such a certificate to Vermilion Mobil, was bound to hold a hearing in order to determine whether appellant, the present holder of a certificate in the area, is rendering adequate service or, if not, can and will render adequate service. Such a hearing was not held by the Commission.

We note that the Commission has failed to make a finding of fact in these cases. We are therefore compelled to look to the testimony to make any factual determination. However, we are cognizant that a finding of substantial evidence to support the Commission's rulings will prevail over our belief that the evidence is persuasive of another conclusion.

Everything in these records requires a finding that in the immediate area of Abbeville there will be competition and duplication of service if Vermilion Mobil is granted its authority. The Commission is therefore required under the explicit language of the statute to conduct "a hearing on reasonable notice" to determine whether the existing service is inadequate and whether the operator is "unable to or re-

fuses or neglects * * * to provide reasonable adequate service".

Vermilion Mobil and the Commission contend that no prior hearing is required, and that Telephone Answering Bureau has in fact had its hearing on the question of its ability and willingness to furnish service in the Abbeville area. We have noted previously the absence of notice pleading and of any delineation of the matters to be considered at the hearings. We have also noted the confusion in the transcript as to the proper witnesses, the proper parties, and the pertinent evidence. Certainly the notices of hearing in both cases fail to charge that existing service in the Abbeville area is inadequate to meet the needs of the people in that area.

Although the Commission is authorized to make rules and regulations governing its proceedings, these rules and regulations are not offered in evidence in these cases, and we cannot take judicial notice of them. However, the Legislature in 1967 adopted uniform rules and regulations for administrative procedure. R.S. 49:951–966. Without determining whether these regulations apply to the Public Service Commis-

sion since that issue is not before us, we find that the Commission's manner of conducting the proceedings in these two matters falls far short of the standards set forth by the Legislature in that enactment.

■ Administrative proceedings are not ordinarily governed by the strict rules of judicial proceedings. The key to pleading and procedure in that administrative process is the opportunity to prepare. 1 Davis, op. cit. supra, Chapt. 8; 1 Cooper, op. cit. supra, Chapt. 10. Generally inadequacies in pleading and notice may be cured if the record establishes a full hearing was had after proper preparation.[3]

For the purpose of our determination of whether appellant has had a hearing as required by R.S. 45:1503C, we will concede that appellant could have waived appropriate pleadings and notice if in fact it had an effective hearing as to availability of service in the Abbeville area, as to the quality of that service, and as to its ability to fully serve the needs of the people in the area. A review of the meager evidence in both records before the Commission forces us to conclude that this was never a real issue to the parties or to the Com-

---

3. Even though due process may not require strict compliance with notice and pleading in administrative proceedings, and even though injustice may not result in a particular case, compliance with reasonable procedural rules is necessary for efficiency. Moreover, compliance with reasonable rules for proceedings is often necessary if proper judicial review is to be accorded. The reviewing courts, which are not endowed with the administrative body's special knowledge apparently carried over from one case to another in many administrative proceedings, must have the evidence which supports that knowledge made a part of the record in the new proceedings.

mission.[4] None of the witnesses appearing before the Commission testified that Telephone Answering Bureau failed in any regard to render service in the City of Abbeville and its immediate environs. There was testimony that "paging service" was desirable in Abbeville. There was hearsay and minimal other testimony that several miles south and southwest of Abbeville the service of Telephone Answering Bureau was inadequate.

Not only has Telephone Answering Bureau been denied a hearing; there is a total absence in the records of the two hearings which are before us of any evidence that its service is inadequate in Abbeville and the immediate environs of Abbeville, unless paging is an essential service and unless the requested base station would fail to cure that defect.

However, the records do establish a need for service south and southwest of Abbeville. We do not determine that Vermilion Mobil is entitled to service the area south and southwest of Abbeville. We do not determine that Telephone Answering Bureau is able to meet the reasonable needs of the Abbeville area, or that Telephone Answering Bureau is entitled to a base station in Abbeville. The testimony of the expert before the Commission indicates that there will necessarily be overlapping of the service rendered by radio common carriers. Possibly the Commission could conclude that a certificate of authority for the area south and southwest of Abbeville is neither inconsistent with the present service in Abbeville nor inconsistent with the granting of authority for a base station in Abbeville to Telephone Answering Bureau so that it can better serve Abbeville and the area to the north. The "reasonable needs" of the people of Abbeville and its environs may very well require some duplication.

■ We do not here determine that an entirely separate hearing must be had for the Commission to comply with R.S. 45:1503C. On the record before us, we do determine that the Commission has adjudicated the rights of Telephone Answering Bureau without complying with that statute, in that a hearing was not afforded the appellant. Since both applications and

---

4. We have previously determined that the district court improperly received and considered the depositions of nine witnesses which were never received or considered by the Commission. Because of the confused state of this record and its incompleteness when filed here, we were forced to read everything before us and then to spend considerable time and effort in getting a semblance of a complete record. We are therefore cognizant from a reading of these depositions that they are almost exclusively concerned with the quality of service rendered by Telephone Answering Bureau in the Abbeville area. These depositions make it more apparent that proper notice was not given of the issue posed by R.S. 45:1503C, that proper preparation could not be made to meet the issue, and that in fact a hearing was not had upon the issue in the Commission.

the question of duplication of service are all interwoven, in the interest of justice we reverse and remand all proceedings.

The judgment of the district court is reversed. The order of the Louisiana Public Service Commission in the application docketed No. 10359, Telephone Answering Bureau, is annulled and set aside insofar as it denied the applicant a base station in Abbeville. The order of the Commission in the application docketed No. 10372, Vermilion Mobil, Inc., is annulled and set aside. The applications are remanded to the Louisiana Public Service Commission for further proceedings consistent with the views here expressed, with instructions to prepare a record in the proceedings there had which is sufficient to afford adequate judicial review in case such review is thereafter sought.

SUMMERS, J., is recused.