DIXON, Chief Justice.
This appeal from the Nineteenth Judicial District Court is to review two rulings of the Louisiana Public Service Commission.
1. Background
A brief review of the “land mobile communications” business and technology is necessary to understand the rulings of the commission and the positions of the parties in this case.
Telephone service is normally provided by direct wire connection between the subscriber and the telephone company. The telephone company operates telephone exchanges which allow connections to be made between subscribers. Connections are also made between exchanges to allow subscribers access to other telephone subscribers throughout the world. Such telephone companies are called “land line telephone carriers.”
The direct wire connection may be replaced with radio communication, allowing the subscriber to have a mobile telephone with two-way communication with the telephone company. Alternatively, the subscriber could arrange for one-way communication from the telephone company to a “beeper” which may allow voice communication in addition to the beep tone. Mobile telephone service and radio paging are forms of “land mobile communications.”
Land mobile communications can be provided by both land line telephone companies and by independent companies known as “radio common carriers” which are in turn connected to the land line telephone company. Though land line telephone companies and radio common carriers operate on dif *696 ferent ranges of radio frequencies assigned by the Federal Communications Commission, the service provided to the customer is essentially the same.
With one-way (paging) service the subscriber desiring to contact the subscriber wearing the beeper calls the designated number for the particular beeper. The call is routed to the telephone company’s transmitter (in the case where the land line company provides the service) or to the radio common carrier’s transmitter (in the case where the radio common carrier provides the service) and the signal is sent. If the beeper is within the range of the transmitter, the signal is received. The process is essentially the same for mobile radio service, except that the call can originate from mobile telephones and sustained communication is achieved.
2. Regulation
While the FCC licenses the use of specific frequencies for land mobile communication operators, regulation of market entry, service and rates has been left to the states. In Louisiana, the land mobile communications industry is regulated by the Louisiana Public Service Commission.
Article 4, § 21 of the Louisiana Constitution of 1974 provides for a public service commission which:
“... shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.”
Telephone companies are public utilities under the jurisdiction of the Louisiana Public Service Commission. See South Central Bell Telephone Co. v. Louisiana Public Service Commission, 352 So.2d 999 (La.1977); R.S. 45:1161, 1164. Telephone companies are also subject to the provisions of R.S. Title 45, Ch. 8 (45:781 et seq.)
Telephone service in Louisiana is served in some areas by South Central Bell, one of the Bell Operating Companies owned by AT & T, and in other areas by various independent telephone companies. Telephone companies are granted exclusive franchises to provide services within their assigned territories and therefore do not compete with one another for customers.
The public service commission regulates radio common carriers under the provisions of R.S. Title 45, Ch. 12 (45:1500 et seq.).
“The Louisiana Public Service Commission shall exercise over and in relation to radio common carriers the powers conferred by this Chapter.” R.S. 45:1500.
Radio common carrier is defined in 45:1501(C):
“The term ‘radio common carriers’ when used in this Chapter includes every corporation, company, association, partnership and persons and lessees, trustees, or receivers, appointed by any court whatsoever owning, operating or managing a radio common carrier or public ‘for hire’ radio service engaged in the business of providing a service of radio communications between mobile and base stations, between mobile and land stations, including land line telephone, between mobile stations or between land stations, but not engaged in the business of providing a public land line message telephone service or a public message telegraph service.” (Emphasis added).
R.S. 45:1501(D) continues:
“Notwithstanding any provisions or R.S. 45:781 through 45:790 [telephones and telegraphs] inclusive, or any provision of this Chapter, the term ‘radio common carrier' as used in this Chapter shall not be construed to mean a company operating under the provisions of Title 45, Chapter 8, of the Louisiana Revised Statutes, and no such radio common carrier shall have any of the powers, rights or duties provided for and prescribed by said Title 45, Chapter 8.” (Emphasis added).
R.S. 45:1502 provides that rates and service shall be just, reasonable and not unduly preferential, and that the public service commission has the authority to issue rules, *697 regulations and orders to govern rates and service.
R.S. 45:1503 requires a radio common carrier to obtain a certificate of public convenience and necessity before beginning operations in a new area (except for expanding an adjacent area not served by another radio common carrier). A radio common carrier holding a certificate is protected from competition from other radio common carriers by R.S. 45:1503(C):
“The commission shall not grant a certificate for a proposed radio common carrier operation or extension thereof which will be in competition with or duplication of any other radio common carrier unless it shall first determine that the existing service is inadequate to meet the reasonable needs of the public and that the person operating the same is unable to or refuses or neglects after hearing on reasonable notice to provide reasonable adequate service.”
Because land line telephone companies are specifically excluded from the provisions of the radio common carrier statute, the commission has not required land line telephone companies to request a certificate of public convenience and necessity to construct or operate land mobile communication facilities within their geographical area. However, the commission had indicated that where a land line telephone company seeks to operate land mobile communications equipment outside of its geographical area (for example, a south Louisiana telephone company intending to offer radio services in north Louisiana), a certificate from the commission would be required. See Order No. U-13727-A, James D. and Larry D. Garvey, d/b/a Radiofone v. Lafourche Telephone Company, April 19,1979.
Neither of these two interpretations of the exclusion of land line telephone companies from the radio common carrier statute is challenged in this appeal. Rather, in the two orders presented for review, the land line telephone companies’ transmitters, located within their geographical areas, have effective ranges which extend beyond the borders of the companies’ land line service areas. It is the competition for customers outside the land line service area that prompted the complaints to the public service commission.
3. The commission’s orders
A. Southern Message Service, Inc. v. Cameron Telephone Company.
On December 26, 1979 Southern Message Service, Inc., a radio common carrier holding a certificate for the Lake Charles Area, filed a complaint with the commission alleging that Cameron Telephone Company, a land line telephone company serving areas of Cameron and Calcasieu Parishes (but not Lake Charles or Sulphur, which are served by South Central Bell), “has plans in progress for the constructing of a transmitter for a one way paging radio telephone service at Carlyss, Louisiana, in Calcasieu Parish which will provide a radio telephone paging service in the Lake Charles and Sul-phur area to customers outside its wire area and in the area which plaintiff has a Certificate of Public Convenience and Necessity to serve.” Cameron answered the complaint admitting that it had applied to the FCC for a construction permit to build transmitting facilities at Carlyss, “the location of which facilities is wholly within the service area authorized by [the public service commission]. Cameron Telephone Company intends to operate this paging system from its authorized service area and to provide service to the public within the radius of its service capabilities.” The transmitter was planned for the 200 foot tower already existing at Carlyss.
The complaint was assigned Docket No. U-14506 and notice of the hearing was sent to the parties and published in the Louisiana Public Service Commission Official Bulletin No. 170, February 15, 1980 styled “In re: Alleged encroachment into territory served by complainant by constructing a radio transmitter at Carlyss, La., that will provide radio paging service into Lake Charles and Sulphur, La.” A hearing was held, and the commission thereafter issued Order No. U-14506 which read in part:
[[Image here]]
*698 It is the opinion of the Commission that Cameron is a public land line telephone company as stated In LRS 45:1501 C and D and under this statute, is not required to seek a certificate of public convenience and necessity to construct facilities within its exchange service area. It appears that the construction of an antenna at Carlyss will create competition to SMSI in a land line telephone company area presently assigned to South Central Bell Telephone Company at Lake Charles and Sulphur. It is therefore
ORDERED that the respondent discontinue activities to provide radio common carrier services in territory outside of the geographical limits of its land line telephone system and that the respondent be notified that it may file application for a radio common carrier certificate pursuant to the provisions of LRS 45:1500, et seq.”
Cameron Telephone requested and was granted a rehearing. The commission amended its Order No. U-14506 in Order No. U-14506-A:
[[Image here]]
On rehearing, the Commission sustained the complaint of Southern Message Service, Inc. as it relates to a land line telephone company providing radio common carrier or paging service outside the geographical limits of its service area with the provision that land line telephone companies may provide radio common carrier and paging service to any person residing or domiciled within the geographical limits of the land line telephone company service area or subscribing to land line telephone service from the telephone company providing the radio common carrier or paging service without having received a certificate of public convenience and necessity from the Commission. It is therefore
ORDERED that the complaint be sustained with the stipulation quoted above.”
Cameron Telephone was thereby permitted to construct its transmitting facilities at Carlyss, but it was limited to serving its land line customers or persons residing or domiciled within the land line area unless it received a certificate from the commission. Unsatisfied with the amended order, Cameron Telephone Company filed a petition to set aside the commission’s order sustaining the complaint of Southern Message Service, Inc.
B. Gulf Central International, Inc. v. Kaplan Telephone Company
On April 21, 1980, after the commission had issued Order No. U-14506, Gulf Central International, Inc., the holder of a radio common carrier certificate for Abbeville, Louisiana, filed a complaint with the commission alleging that Kaplan Telephone Company was conducting radio common carrier services beyond its land line area. Kaplan answered the complaint, stating that its transmitter was located in the center of Kaplan and served customers both inside and outside the land line boundary, but that those outside the Kaplan area had to make a toll call to use the service. Ka-plan contended it did not solicit customers outside its area and that it would be difficult to police users to determine if they were in or out of the boundary.
The complaint was assigned Docket No. U-14645 and notice of hearing was published in the Official Bulletin No. 201, April 24, 1981 styled: “In re: Alleged operation of radio common carrier services outside authorized land line telephone area.” After a hearing, the commission issued Order No. U-14645. In the order, the commission reviewed its previous orders concerning territorial disputes between land line telephone companies and radio common carriers in which it had limited telephone companies to operating facilities only within their land line boundaries and to serving only customers residing or domiciled within those boundaries or subscribing to their telephone service.
The commission then considered the statements it had made in its previous orders that a land line telephone company would have to seek a certificate of public convenience and necessity in order to provide services outside of its service area:
*699 [[Image here]]
The definition of ‘radio common carrier’ in R.S. 45:1501-C excludes businesses providing a public land line telephone message service, or a public message telegraph service. Because of this exclusion, the Legislature apparently did not intend for telephone companies to obtain a certificate from the Commission in order to provide radio telephone communications in conjunction with their land line telephone operators. We do not believe, however, and so reaffirm our previous decision, that such exclusion would apply to facilities of a land line telephone company constructed outside its service area, or within its service area but at a location remote from an exchange office and on the periphery of its land line telephone system wherein the radio transmission facilities could not reasonably be presumed to have been designed to serve principally its land line telephone subscribers.”
The commission determined that the land line boundary was not the appropriate standard for defining the service area of a radio-telephone system operated in conjunction with a land line telephone system, since radio waves could not be restricted to geographical boundaries.
[[Image here]]
It is, therefore, the conclusion of the Commission that the location of the radio transmitting tower effectively establishes the service area of the radio-telephone communications system operated by a land line telephone company, and that such services may be provided to any subscriber who believes that the effective range of the transmission will meet his needs. Since the radio-telephone communications are an integral part of the land line telephone system, the transmitting tower should be located at an exchange office or in close proximity thereto. Under these circumstances, such radio-telephone communications by a land line telephone company is exempt under the Radio Common Carrier law. These restrictions should provide adequate protection for the radio common carrier from an unwarranted intrusion into territory previously certificated to the radio common carrier by the Commission.”[1]
The order further stated that existing towers in operation were “grandfathered”, but new or additional services would have to comply with the requirements of the order or be covered by a certificate from the commission.
Cameron Telephone moved in the district court to remand its case to the commission for further proceedings consistent with the commission’s order in Kaplan. The commission amended its Order No. U-14506-A to conform to its Order No. U-14645. Southern Message Service, Inc. and Gulf Central International, Inc. appealed their respective orders to the district court where the cases were consolidated. The Louisiana Telephone Association and East Ascension Telephone Company intervened, uniting with defendants, and Radiofone, Inc., a radio common carrier, intervened, joining with plaintiffs. In written reasons, the district court found the commission’s orders were proper regulation of land line telephone companies and were not made in an arbitrary, capricious or abusive manner. From this decision plaintiffs sought a devolutive appeal to this court.
4. Issues on appeal
Each of the three plaintiffs raises the issue of the commission’s interpretation of the radio common carrier statute (R.S. 45:1500 et seq.) which allows land line telephone companies to provide radio services to customers outside their geographic land line areas. In addition, these applicants raise various issues relating to the manner in which the commission’s orders were issued, including lack of adequate notice of the commission’s change of policy and the denial of equal protection created by a dual standard applicable to telephone companies *700 and radio common carriers. Finally, Southern Message Service, Inc. contends the commission deprived it of procedural due process of law in amending Order No. U — 14506 after remand from the district court without providing notice or opportunity for Southern Message to be heard.
5. Merits
We take up first Southern Message Service, Inc.’s contention that it was deprived of procedural due process by the failure of the commission to conduct a hearing after remand of the Cameron Telephone order from the district court. The commission had held hearings on the complaint filed by Southern Message both after the complaint had been originally filed and after the commission granted Cameron Telephone’s request for a rehearing. The litigants had the opportunity at both hearings to present whatever evidence they felt appropriate. There is no contention that due process had been violated up to this point.
After the case had been taken to the district court, the commission issued its order in the Kaplan Telephone case, reversing its position in the Cameron case. Cameron Telephone, plaintiff in the district court suit, moved to remand the case to the commission for further consideration in light of the commission’s Kaplan decision, which was granted by the district court after hearing. Without a hearing before the commission, the commission amended its previous order in the Cameron case.
In support of its position, Southern Message relies on jurisprudence wherein administrative actions taken without the opportunity for a hearing were found to violate procedural due process. Tafaro’s Investment Co., Inc. v. Division of Housing Improvement, 261 La. 183, 259 So.2d 57 (1972) (no hearing afforded property owner prior to making repairs to bring building up to code standards and placing lien on property for such costs); Parker v. Board of Barber Examiners, 84 So.2d 80 (La.App.1955) (disapproval of plaintiff’s school without hearing); Vaughan v. Housing Authority of New Orleans, 80 So.2d 561 (La.App.1955) (heirs not made party to suit could not be deprived of ownership rights acquired upon death of deceased).
We find these authorities inapplicable to Southern Message’s situation. It was afforded two full hearings on its complaint to the commission. In remanding the case to the commission, the district court acted in a manner analogous to that required where new evidence is introduced in the district court. R.S. 45:1194[2] provides for remand to the commission of the transcript of any new evidence taken in the district court. Thereafter the commission has fifteen days in which to consider the evidence and it may alter, modify, amend or rescind its previous decision. R.S. 45:1195[3] provides that if the commission changes its decision, the “amended order shall take the place of the original order complained of and judgment shall be rendered thereon [by the district court], as though made by the commission in the first instance.” See White v. Louisiana Public Service Commission, 259 La. 363, 250 So.2d 368 (1971).
*701 The district court did not remand the present case due to any deficiency in the record. Rather, the court was informed of the commission’s subsequent Order No. U— 14645 and remanded the matter “for further proceedings and orders consistent” with that decision. Neither the above mentioned revised statutes nor the district court’s order requires a hearing be held by the commission after a remand. Furthermore, the United States Supreme Court in Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, 374, 59 S.Ct. 301, 307, 83 L.Ed. 221 (1939), reviewing a remand order of the Court of Appeals, indicated that the consequences of the remand order would depend on the purpose for the remand and the state of the record:
“Such a remand does not dismiss or terminate the administrative proceeding. If findings are lacking which may properly be made upon the evidence already received, the court does not require the evidence to be reheard.... If further evidence is necessary and available to supply the basis for findings on material points, that evidence may be taken.... ”
No additional findings of fact were required of the commission because of the district court’s remand, as a complete record had been made in the prior hearings. It was therefore within the commission’s discretion to rely on the existing record in reconsidering its order in light of its position in the Kaplan case. We find no abuse of the commission’s discretion or denial of due process in the procedure followed subsequent to the remand order.
All three plaintiffs raise the issue of the commission’s interpretation of the radio common carrier statute, R.S. 45:1500 et seq. Plaintiffs contend that the statute, by excluding land line telephone companies from its scope, prohibits land line telephone companies from operating radio common carrier services outside their land line areas, regardless of the location of the transmitting equipment. They argue that when the legislature passed the statute in 1968, it was with the knowledge that land line companies were not permitted to serve anyone other than their telephone customers, and, with that understanding, there was no need for such companies to apply for certificates from the commission. They contend that the legislative intent in providing for the commission to issue certificates was to avoid duplication and waste of resources, as evidenced by the requirement of showing inadequate service before a certificate would issue. Allowing telephone companies to compete for customers outside their areas without having to make such a showing, it is argued, is contrary to the legislative intent.
The telephone companies and the commission argue that the commission’s interpretation of the radio common carrier statute’s exemption of land line telephone companies from its scope is reasonable and consistent with the legislative purpose in exempting those companies. They argue that the legislative intent was to allow land line companies to provide the full range of telephone services, including radio services, to its customers without any barriers to market entry. To ensure that the radio services provided are designed to serve essentially the telephone companies’ customers, the commission has required towers to be located at or near exchange offices. The public interest is then served by allowing anyone who feels the range of the transmitter meets his needs to make use of the service.
Under the settled jurisprudence of this court, the decisions of the commission are to be accorded great weight and are not to be disturbed unless found to be clearly erroneous, unsupported by the evidence, or an abuse of power. Southern Message Service, Inc. v. Louisiana Public Service Commission, 426 So.2d 606 (La.1983); Monochem v. Louisiana Public Service Commission, 253 La. 1047, 221 So.2d 504 (1969). The decision required of the commission in these complaints involves complex matters having far-reaching effects on the radio communications industry, which it is mandated to regulate in the public interest. Where the special expertise of the commission is called into play, the courts should act slowly in substituting their own views for *702 those of the expert body. Monochem v. Louisiana Public Service Commission, supra.
Plaintiffs’ arguments that the passage of the radio common carrier statute with its exemption for land line telephone companies prohibited land line companies from offering radio service beyond their boundaries is not supported by a reading of the statute. The statute on its face deals only with radio common carriers. It does not limit in any way the operations of land line telephone companies. However, the commission has not accepted the statute as completely exempting land line telephone companies. Rather, the commission has interpreted the statute as exempting land line companies from the certification requirements only when the company is dealing essentially with its own customers, that is, when operating facilities within its geographical boundaries. This view has been consistently held by the commission, as conceded by all parties to this litigation. This interpretation is a reasonable one, since where a land line telephone company seeks to operate outside its boundaries, it is no longer advancing the public policy of providing a full range of communications services to its customers. Therefore, the public policy evident in the radio common carrier statute against unnecessary competition and duplication of services supersedes the literal exemption granted to land line telephone companies. For this same reason, the commission has required that land line companies’ transmitting towers may not be located at the edge of the land line boundary without certification. By limiting the location of uncertified towers, the commission has sought to provide adequate protection for a radio common carrier serving the area outside that land line company’s boundaries.
The change in the commission’s interpretation and application has come in the identity of those whom the land line telephone company is authorized to serve without certification. In the initial Cameron order, as amended on rehearing, the commission limited Cameron Telephone Company to serving only its customers or persons residing or domiciled in the land line area. The commission included no such limitation in its Kaplan order.
Gulf Central International, Inc., the complainant in the Kaplan case, attempted to show that Kaplan had used an Abbeville answering service and foreign exchange lines in connection with its paging services to eliminate toll calls for those using the pager service, and that pagers were being distributed out of that agency. Proof of these allegations was insufficient. Kaplan Telephone Company readily admitted, however, that it was providing paging services to customers residing outside the land line area. Kaplan’s president testified:
“My intent, sir, is to serve as a telephone company any request we are authorized to serve. We are not authorized to refuse service to anyone within whatever the government — under our regulations. If somebody walks into my office, and they want service, and we have it available or we are authorized to give them service, we’re not supposed to refuse them. That has been the ruling of the Commission for years, the Public Service Commission.”
The commission also heard testimony from several of Kaplan’s beeper customers who did not live in the land line area. A welder testified that he did 90% of the welding work for the Kaplan area farmers, and that they had to use his beeper number to get in touch with him when they needed him. Representatives of a contractor and two trucking companies testified that they used Kaplan beepers to reach their employees while they are in the Kaplan area.
The commission therefore had before it evidence to support its conclusion that the public interest is served by allowing those who feel the range of the transmitter suits their needs to be permitted to make use of Kaplan Telephone Company’s paging services. Each of the witnesses called by Kaplan testified that his business would be adversely affected if he were not permitted to utilize Kaplan’s service. The commission has not acted arbitrarily in allowing other than land line customers to *703 use land line company paging services. See Southern Message Service, Inc. v. Louisiana Public Service Commission, supra; Louisiana Power & Light Co. v. Louisiana Public Service Commission, 358 So.2d 623 (La.1978).
Plaintiff Radiofone’s argument that the orders of the commission violate equal protection of the laws is without merit. Radiofone insists that since a radio common carrier is required to obtain a certificate to serve the same area that a land line company may serve without a certificate, it is deprived of constitutional guarantees. The radio common carrier statute’s entry requirements are applicable only to radio common carriers, and are applicable only when entry is sought into a geographic area already served by another radio common carrier. Whether the local land line telephone company is providing radio services in the area is irrelevant in determining whether services provided by radio common carriers are presently adequate. Likewise, a land line telephone company may, under the restrictions included in the commission’s orders, serve an area outside their boundaries regardless of whether a radio common carrier has been certified to serve that same area.
Radiofone relies on Frost v. Corporation Commission of Oklahoma, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483 (1929), in which an Oklahoma provision requiring corporations to secure a certificate of public necessity before being permitted to operate a cotton gin but exempting collective farmer associations from showing such a public need was found to violate equal protection. The court found that the only distinction between the two types of organizations was the form of the business, which was not related to the purpose of the legislation, and was therefore not sufficient to support the different treatment accorded them. In this case, though radio communications provided by radio common carriers and land line telephone companies are essentially the same, there are real and substantial differences between the two types of companies. In enacting the radio common carrier statute, the legislature was careful about maintaining the distinction between them, both by excluding land line companies from the statute and in providing that “no such radio common carrier shall have any of the powers, rights or duties provided for and prescribed by said Title 45, Chapter 8.” R.S. 45:1501(D). Frost v. Corporation Commission, supra is clearly distinguishable.
Whenever there is less than full competition for customers, there will be differences in the treatment of market competitors. Plaintiffs have not borne their burden of showing the differences here are of constitutional proportions.
Having rejected plaintiffs’ arguments that the orders of the commission in the Kaplan and Cameron cases are invalid, we now turn to plaintiffs’ contentions that the orders should be vacated because the procedure employed by the commission in adopting the rule expressed in the orders did not properly protect the rights of radio common carriers and the general public. Plaintiffs suggest the rule should have been considered by the commission only after a full hearing on the issue following notice to those whose rights would be affected.
Louisiana Constitution article 4, § 21(B) provides that the commission “. .. shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties ...” Our task on review is to consider the “reasonableness” of the commission’s procedure. See Louisiana Consumers’ League v. Louisiana Public Service Commission, 351 So.2d 128 (La.1977).
Radiofone contends that the reversal of the established practice of the commission of limiting land line telephone companies to their geographical areas should not have been made in the format of an adjudicatory hearing. Rather, it is suggested that the commission should have followed its own Rule 47 which provides for formal public hearings where the commission finds that procedure appropriate. Failure to conduct such a hearing, it is argued, constitutes an abuse of the commission’s discretion.
*704 We are not persuaded that the commission in fact had a long standing established practice of limiting land line telephone companies to serving only their own customers with radio services. The prior rulings cited by Radiofone deal with the use of facilities outside the land line area. Only in the Cameron and Kaplan cases was the issue whether nonsubscribers could be served by facilities within the geographical boundaries of the land line telephone companies. As to the form of the commission’s procedure, there is no requirement that the public service commission develop rules governing the subjects under its jurisdiction through formal rule making rather than on a case by case basis. The variety of possible situations, as evidenced by the radio common carrier industry itself, often requires the more flexible procedure utilized by the commission in regulating this industry. The commission is in the best position, having regular contact with the subjects and problems in the industries under its jurisdiction, to determine the best method of rule development. We find no abuse of the commission’s discretion in regulating the radio common carrier industry on a case by case basis.
Consistent with the case by ease method of rule making employed by the commission, it has complied with the due process requirements applicable to the parties in the cases below. There was adequate notice and a hearing held. Through publication in the Official Bulletin, others would be apprised of the general subject matter of the proceeding, and their intervention would have been permitted under public service commission rules. Radiofone’s arguments in brief, that it was a “party” whose rights were affected without notice and opportunity to be heard, would be applicable only if Radiofone had made itself a party through intervention before the commission.
6. Conclusion
The Louisiana Public Service Commission Orders No. U-14506-A and U-14645 are affirmed. Nothing in this opinion should be construed as prohibiting the commission from continuing in its efforts to develop appropriate rules for the regulation of the land mobile communications industry or to prohibit the radio common carrier industry from continuing its challenge to the present rules before the commission.
LEMMON, J., dissents.

. Commissioner Schwegmann, concurring in the order, was of the opinion that there should be no restriction on the land line telephone company in the location of its radio transmitting tower. There were no other dissents or concurrences.

. “If, upon the trial of any suit brought to contest any decision, act, rule, rate, charge, classification, or order, of the commission, the plaintiff introduces evidence which is found to be different from that offered upon the hearing before the commission, or additional thereto, the court, before proceeding to render judgment, unless the parties to such action stipulate in writing to the contrary, shall send a transcript of such evidence to the commission, and stay proceedings in the suit for fifteen days from the date of such transmission. Upon the receipt of the transcript, the commission shall consider the evidence, and it may alter, modify, amend, or rescind its decision, act, rule, rate, charge, classification, or order, complained of in the suit and shall report its action to the court within fifteen days from the receipt of the transcript.” R.S. 45:1194.

. “If the commission rescinds the order complained of, the suit shall be dismissed; if it alters, amends or modifies the order, the altered, modified, or amended order shall take the place of the original order complained of and judgment shall be rendered thereon, as though made by the commission in the first instance. If the original order is not rescinded or changed by the commission, judgment shall be rendered by the court upon the original order.” R.S. 45:1195.