LANDRIEU, Judge.
In this appeal, we are asked to review the trial court’s affirmation of a ruling of the Louisiana Motor Vehicle Commission, which granted a state license to Coleman Oldsmobile, Inc. to engage in the sale of Chevrolet automobiles from a temporary location. Finding no manifest error, we affirm that decision.
FACTS AND PROCEDURE:
Since 1972, there have been three (3) Chevrolet automobile dealerships within the Baton Rouge city limits. At the onset of this dispute, those dealerships included Mclnnis-Peterson Chevrolet, Inc. (hereinafter “McPete”), Harris Chevrolet, Inc. (hereinafter “Harris”), and Gerry Lane Enterprises, Inc. d/b/a Gerry Lane Chevrolet (hereinafter “Lane”).
Although all three dealerships experienced a financial loss in the sale of new cars in recent years, McPete apparently suffered the most severe economic problems. In an attempt to satisfy their creditors and to realize some return from their investment, the owners of the McPete dealership considered first a merger and then a buy/sell agreement with other area dealerships. A proposed merger with Lane, as approved by the General Motors Corporation (GMC), would have resulted in the continuation of operations at the McPete location only and a two (2) year moratorium on the re-opening of a third “point” within the city limits. However, the existence of environmental problems and the potential of substantial clean-up costs at that location apparently rendered this proposal undesirable, and the owners of McPete entered into negotiations for a buy-sell with Coleman Oldsmobile, Inc. (hereinafter “Coleman”).
By Agreement dated December 23, 1991, Coleman agreed to purchase McPete’s inventory of vehicles, parts, and accessories and to assume certain equipment leases. Under the terms of the agreement, Coleman sought to transfer the McPete Chevrolet “point” from its existing location to its Oldsmobile franchise at 9150 Airline Highway, Baton Rouge, a move of approximately 1.1 miles to a slightly more northerly position. GMC, which normally opposed such “dualing” in a metropolitan area like Baton Rouge and which had determined that an existing “point” should be migrated south in recognition of population shifts, approved the proposed sale of assets on the condition that the Chevrolet franchise would be relocated within eighteen (18) months. It was agreed that the Chevrolet franchise would be moved to a more southerly location, to a site owned by Coleman at 10391 Airline Highway.
When Coleman applied for a license with the Louisiana Motor Vehicle Commission (hereinafter the “LMVC”) to operate the Chevrolet franchise at the temporary location, Harris and Lane, as same line dealerships within the territory in which the applicant proposed to conduct business, were notified by letter dated April 3, 1992. Within fifteen (15) days after the receipt of the notice, they filed protests with the LMVC and urged procedural and substantive objections to the proposed license. At that stage of the proceedings, their procedural complaints included the failure of Coleman to provide the Commission with sixty (60) days notice of their intent to file the application and the lack of a bona fide contract or franchise agreement between *735 the applicant and the manufacturer attached to the license application.[1]
Harris and Lane, as well as dealers of other lines of motor vehicles in the greater Baton Rouge area, also contend that the temporary relocation and “dualing” of the Chevrolet franchise with Coleman’s existing Oldsmobile franchise constitutes an unfair act which tends to disrupt the system of distribution of motor vehicles. They reason that, if Coleman could operate a Chevrolet franchise with minimum overhead costs in addition to those already existing for the Oldsmobile franchise, that dealership would enjoy an unfair advantage over its competitors. Furthermore, it is argued that, in order to compete, dealers such as Lane and Harris would be required to cut costs, which would result in a significant reduction in service to the consuming public. It is the position of these dealers that any short term reduction .in price of vehicles to the public would be offset by the corresponding reduction in service.
At a hearing on May 5, 1992, a month after notice of Coleman’s application was sent to Harris and Lane, the protestants, their expert in market analysis, other area dealers, and the parties to the buy/sell agreement were permitted to testify. A three member panel of the LMVC found that Coleman had the financial and business integrity to operate the franchise as well as the ability to properly conduct the business for which the license was sought. They also found that Coleman’s established place of business was adequate for the purpose for which the license was sought. Furthermore, the panel did not conclude that the award of a license would have a negative effect on the retail motor vehicle business, the consuming public, or on the public welfare, or that it would create an unfair business practice by which fair and honest competition would be destroyed or prevented. In fact, the increased eompetition generated by the issuance of the license was deemed by the panel to be in the public interest. Accordingly, the Commission awarded to Coleman a license to engage in the sale of Chevrolet motor vehicles.
Lane and Harris sought judicial review of the commission action in the Civil District Court for the Parish of Orleans, where the Commission is domiciled. By supplemental and amending petition, a stay of the administrative ruling was requested and granted by the trial court, upon furnishing security in the amount of $250,000.00. Seeking this Court’s review of the stay order, however, Coleman, an intervenor in the proceeding, filed an application for supervisory writs. Since no evidence was found in the record to support the order, this Court vacated it and remanded the matter for an evidentiary hearing. Apparently, the judge and parties agreed that the case could be decided on the record more quickly than an evidentiary hearing could be scheduled, and the request for a stay order was abandoned.
Thereafter, the trial judge, without further testimony or oral argument entered a judgment on July 20,1992. After considering the record, memoranda and the law, he confirmed the decision of the LMVC which granted to Coleman a license to operate the Chevrolet franchise from a temporary location for a period not to exceed eighteen (18) months. Lane and Harris appeal that judgment.
DISCUSSION:
Scope of Review:
Pursuant to La.Rev.Stat.Ann. § 49:964 A (West 1987), a person who is aggrieved by a final decision in an administrative proceeding is entitled to judicial review.[2] If substantial rights of the appellant have *736 been prejudiced, the court may reverse or modify the decision under certain circumstances. Reversal may occur if the administrative decision is (1) in violation of constitutional or statutory provisions; (2) in excess of the commission’s statutory authority; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion; or (6) manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. La.Rev.Stat.Ann. § 49:964 G (West 1987).
Unlawful Procedure:
(1) Sixty (60) Day Notice
With limited exceptions, which are not applicable in this case, any person seeking to establish a new motor vehicle dealership or to effect a change of location, ownership, or name of a licensee must send written notice to the commission at least sixty (60) days prior to receipt of the application. The commission, however, is statutorily authorized to waive the notice requirement, when, in its discretion, waiver is in the best interest of the public welfare. La.Rev. Stat.Ann. § 32:1254 E (West 1989).
In this case, the executive director of the LMYC waived the notice requirement. Thereafter, some ten (10) days after the application had been filed by Coleman, that unilateral action of the director was ratified at a meeting of the commission.
(2) Completeness of Application
In addition to specific information on forms prescribed by the commission and furnished to the applicant, an application for a license as a motor vehicle dealer must be accompanied by the bona fide contract or franchise in effect between the applicant and the manufacturer. La.Rev.Stat.Ann. § 32:1254 C (West 1989). An exception to this requirement exists only if such contract or franchise has previously been provided to the commission.
Coleman attached to its application a copy of a letter agreement dated March 30, 1992. The letter from GMC to Coleman’s attorney, the result of several months of negotiations, outlined the terms whereby Chevrolet would approve the purchase of the assets of McPete. As evidenced by the signature of Robert Coleman, the terms were accepted. Nevertheless, the approval by Robert Coleman did not specifically note his representative capacity for the dealership corporation, and the letter referenced other documents, which were not attached to the application. Despite these possible deficiencies, the attorney for the commission found that the provisions contained in the letter, as accepted by Coleman, constituted a bona fide contract. He also noted in a letter to counsel for appellants that it was customary for manufacturers to use a bona fide contract at this stage of the application for a license rather than to issue a franchise agreement.
Assuming that either the waiver/ratification or the attachment to the license application was procedurally deficient, the protestants have failed to make any showing that their substantive rights were thereby prejudiced. And, pursuant to § 49:964 G, the court may reverse the decision of the agency in the judicial review of an adjudication proceeding “if substantial rights of the appellant have been prejudiced.” Durousseau v. Louisiana State Racing Commission, 399 So.2d 1288, 1291 (La.App. 4th Cir.1981).
In this case, the protestants were well aware of the relevant terms of the agreement between Coleman and GMC and were afforded an opportunity for a full hearing in which to air their opposition, which included the testimony of an expert, a market analyst. Since the key to pleading and procedure in the administrative process is the opportunity to prepare, inadequacies are considered cured if the record establishes that a full hearing was had after proper preparation. Hopping v. Louisiana Horticulture Commission, 509 So.2d 751, 756 (La.App. 1st Cir.1987) (citing White v. Louisiana Public Service Commission, 259 La. 363, 250 So.2d 368 (1971)).
(3) Qualification of Commissioners
Since, at the time of the hearing, *737 the panel members[3] had neither been confirmed by the Louisiana Senate nor taken the oath of office, the appellants now urge that they were technically unqualified to adjudicate this matter. The challenge, however, was not made at the hearing, where the appellants, in fact, actively sought relief from this panel.
These panel members were at least de facto officers, acting under color of authority. Accordingly, their acts concerning the public or the rights of third parties are as valid and effectual as the acts of an officer de jure and cannot be collaterally attacked. State v. Stripling, 354 So.2d 1297, 1300-01 (La.1978).
(4) Premature Issuance of License
Appellants contend that the issuance of the license just six (6) days after the hearing was conducted was premature, since, pursuant to La.Rev.Stat.Ann. § 32:1256 E (West Supp.1993), the decision of the commission shall not become final for a period of thirty days. We conclude, however, that their reliance on that provision of the statute is misplaced. That thirty day (30) period is designed to permit the applicant or the licensee, not the protestants, to appeal from the decision of the commission. Appellants, therefore, may not avail themselves of this delay. To affect a stay of the issuance of the license, the appellants were entitled to seek such relief under the provisions of the Administrative Procedure Act.
Manifestly Erroneous:
In determining whether or not to issue a license to an applicant, the LMVC is statutorily directed to consider the declaration of public policy contained in § 32:1251 as well as (1) the applicant’s financial standing and business integrity; (2) the applicant’s ability to conduct properly the business for which the license is sought; (3) the adequacy of the applicant’s established place of business; (4) the effect on the retail motor vehicle business and the consuming public in the community; and
(5) the effect on the motor vehicle leasing/rental business and the consuming public in the State. § 32:1254 B. Furthermore, in the face of objections to the issuance of a license by dealerships selling the same line make vehicle within the community or territory, the commission is additionally directed to consider the effect on the public welfare of permitting operation at the location involved; the adequacy of representation and convenient consumer care for motor vehicles of the same line; and public interest or the likelihood of increased competition. § 32:1254 G.
According to appellants, the reliable, probative, and substantial evidence regarding these considerations, which was presented at the May 5, 1992 hearing, requires findings that the issuance of the license to Coleman would have an adverse effect on the public welfare and would not be beneficial to consumers; that Harris and Lane provide adequate representation and convenient customer care in their respective territories; and that, although the “dualing” would possibly foster competition, it would not be beneficial to the consumers or be in the best interest of the public in the long run. Therefore, they urge that the award of the license to Coleman was manifestly erroneous.
The record reflects that, indeed, all relevant factors as well as the declared public policy underlying the statutory regulation were considered by the commission in determining whether or not to issue the license to Coleman at the temporary location. In fact, the adequacy of the applicant’s financial standing, business integrity, ability, and established place of business is not disputed. Contested factors include essentially the additional considerations mandated by § 32:1254 G when existing motor vehicle dealerships sell the same line make vehicle within the community. However, the commission’s consideration of those factors was guided by the decision of the Louisiana Supreme Court in Benson & Gold Chevrolet, Inc. v. Louisiana Motor Vehicle Commission, 403 So.2d *738 13, 22 (La.1981), which, in considering the public interest and welfare, noted:
The purpose of the M.V.C. is not to keep every automobile dealership in Louisiana secure from financial loss, however desirable a prospect that may be; it is to prevent the unfair practices by which financial loss occurs. If a dealership’s profits are reduced because of “vigorous and healthy competition” from another dealership, that is both “fair” and “honest,” the M.V.C. is powerless to interpose its authority. Indeed, it is the M.V.C.’s mission to foster such competition.
Therefore, the Court held that an applicant who meets the general standards established by law may not be denied a license on the grounds of public interest and public welfare unless an unfair practice or a disruption of the system of distribution of motor vehicles to the public is involved. Id. at 23.
In view of environmental problems at the McPete “point” and the financial circumstances of its owners, this buy/sell agreement with Coleman may be the most equitable resolution of the matter. Furthermore, the relocation does not change the number of Chevrolet dealerships in the Baton Rouge area, and the general prohibition against “dualing” is a policy of GMC to protect the existing dealers’ return on investment and not of the LMVC to promote the public interest and public welfare. It is also agreed that the initial impact of the issuance of the license to Coleman will foster competition and likely result in a reduction in the price of automobiles in the Baton Rouge area.
The trial court then was not manifestly erroneous in agreeing with the commission that any competitive advantage based on lowered overhead through the “dualing” of Chevrolet and Oldsmobile franchises, for a period of eighteen months, does not involve an unfair practice under these circumstances. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.

. Later in the proceedings, Harris and Lane also complained that the license was issued prematurely and that the procedure was unlawful since the commissioners themselves had not been confirmed by the Senate and had not taken the oath of office at the time of the hearing.

. Under Chapter 6 of Title 32 of the Revised Statutes, entitled "Distribution and Sale of Motor Vehicles,” the licensee or applicant for a license may appeal the decision of the commission in accordance with the Administrative Procedure Act. Although that appeal is restricted to the issues as heard by the commission, they shall be tried de novo. La.Rev.Stat.Ann. § 32:1256 E (West Supp.1993).

. The panel members who heard the instant dispute included Ronald J. Blenderman, Linda C. Hobbs, and Ernest A. Burguieres, III. Blen-derman and Hobbs received their commissions on April 13, 1992 and Burguieres on April 24, 1992. Senate confirmation for all three occurred on June 22, 1992.