509 So.2d 751 (1987)
Michael HOPPING
v.
LOUISIANA HORTICULTURE COMMISSION.
No. CA 86 0436.
Court of Appeal of Louisiana, First Circuit.
May 27, 1987.
Dissenting Opinion June 23, 1987.
*752 Edward F. Glusman, Baton Rouge, for Michael Hopping.
Winston Riddick, Baton Rouge, for Louisiana Horticulture Com'n.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
ALFORD, Judge.
Plaintiff, Michael Hopping, filed a petition of suspensive appeal, judicial review, temporary restraining order, and injunctive *753 relief relative to a decision of the Horticulture Commission of Louisiana (the Commission). The trial court affirmed the Commission's decision finding plaintiff in violation of Louisiana horticulture law. Plaintiff now appeals to this court and assigns errors alleging the evidence presented to the Commission did not support its findings of fact, the Commission used an unlawful procedure in obtaining information and thus violated his constitutional rights, the Commission refused to answer interrogatories or comply with his request to produce documents, the penalties imposed exceeded the Commission's authority, and the statutes violated by Mr. Hopping are unconstitutionally vague.

FACTS
The Commission received two complaints, dated July 30, 1984 and September 17, 1984, from Mr. Dennis Gail Abbey, coordinator of the Baton Rouge section, Louisiana chapter of the American Society of Landscape Architects. He apprised the Commission that Michael Hopping was engaged in landscape design at the Iberville Parish courthouse in Plaquemine, Louisiana, and that neither the plans nor specifications were stamped with the registration seal of a licensed landscape architect. Mr. Hopping had entered into an agreement with Bradley-Miremont and Associates, Architects and Engineers, and Forte and Tablada, Inc., Engineers, Architects and Planners, to provide "full and complete architectural landscaping services for the [Iberville Parish Courthouse], consisting of Plans, Specifications, Estimates, Supervision and Warranty Inspections." Although Mr. Hopping holds a valid landscape contractor's license, he has never been licensed as a landscape architect. He claims to have employed Mr. Chris Braud and Ms. Cynthia Cash, both of whom are licensed, and thus complied with the statute.
Two investigative hearings were held by the Commission on May 8, 1985 and June 11, 1985. The Commission then notified Mr. Hopping that he had violated then LSA-R.S. 37:1964(C) [now redesignated as LSA-R.S. 3:3804(C)] by receiving fees and soliciting business in the regulated profession of landscape architecture without a license. The Commission issued several subpoenas duces tecum and conducted an adjudicatory hearing on September 20, 1985. Its pertinent findings of fact are as follows:
The Iberville Parish Police Jury contracted with Forte and Tablada and Bradley and Miremont to construct a new courthouse complex in Plaquemine, Louisiana. These two firms, through Bradley and Miremont, contracted with Michael Hopping to provide all landscape architectural drawings, plans, designs, specifications, supervision, and warranty of the landscape work for the Iberville Courthouse Building. Mr. Hopping contracted with Mr. Chris Braud and Ms. Cynthia Cash to provide the landscape architectural services. The specifications and design for the landscaping of the Iberville Courthouse Building was submitted by Mr. Hopping to Bradley-Miremont. Mr. Braud and Ms. Cash were self-employed individuals. They were not regular employees of Michael Hopping. Both were paid on an hourly basis by Mr. Hopping for the work that they actually performed. They did not receive a regular paycheck from Mr. Hopping. They did not receive wages from Mr. Hopping. No workmen's compensation, no FICA, and no income tax were withheld from the monies paid to them by Mr. Hopping. These two individuals paid income tax as self-employed persons and also paid social security taxes as self-employed persons.

REVIEW OF DECISION
Between August 13, 1982 and April 17, 1985, the pertinent time Mr. Hopping was engaged in this project, LSA-R.S. 37:1964(C) read:
No person shall receive fees, whether directly or indirectly, for engaging in a regulated profession, or advertise as engaged in a regulated profession, or solicit business in a regulated profession, unless the person holds a valid *754 appropriate license issued by the commissioner, or is employed by or is working under the direct supervision of a person who holds a valid appropriate license issued by the commissioner.
Based on its findings of fact, the Commission issued a written conclusion of law that Mr. Hopping was guilty of four violations of this statute, since then LSA-R.S. 37:1970(A) [now redesignated as LSA-R.S. 3:3810(A)] provided that each day on which a violation occurs shall be considered a separate offense. Mr. Hopping had submitted invoices for which he received payments in four separate checks.
The general principle governing judicial review of administrative decisions is that, if the evidence as reasonably interpreted supports the determination of an administrative agency, its orders are accorded great weight and will not be reversed or modified in the absence of a clear showing that the administrative action is arbitrary and capricious. Summers v. Sutton, 428 So.2d 1121, 1129 (La.App. 1st Cir. 1983).
Mr. Hopping testified at the adjudicatory hearing that he "did a site analysis and drew up some preliminary plans for the site." He also worked with George Francise, a landscape supervisor for Ascension Contractors, Inc., who answered "Mr. Hopping" in response to the question "[w]ho supervised or directed or gave instructions to you ..."?
LSA-R.S. 37:1968(E) and (F) [now redesignated as LSA-R.S. 3:3808(E) and (F)] regulated separately the professions of landscape architect and landscape contractor. The former "may prepare and supervise the execution of plans, studies, surveys, specifications, and designs for the preservation, reclamation, or development of land areas, vegetation, hydrology, water features, and nonhabitable landscape features." A landscape contractor "may execute plans, studies, surveys, specifications, and designs prepared by a licensed landscape architect, and may recommend and execute measures for interior and exterior beautification and development through the use of nursery stock." A landscape contractor may also sell nursery stock which he installs.
It is undisputed that Mr. Hopping has never held a license as a landscape architect, although he admitted he prepared some plans and supervised their execution. He represents himself as "Michael Hopping, Landscape Design and Construction" on his letterhead and checking account, and signed the agreement with Bradley-Miremont and Forte and Tablada as "Michael Hopping, Landscape Designer." The only way he could be in compliance with the statute was if Chris Braud and/or Cynthia Cash were his "regular employee[s]." Both Mr. Braud and Ms. Cash testified they worked for Mr. Hopping on an hourly consultant basis. Mr. Braud had contracted regularly with Mr. Hopping on different projects for a period of years beginning in 1981. Mr. Hopping paid Mr. Braud $34,645.06 in 1981, $36,595.96 in 1982, $45,262.00 in 1983, and $21,346.72 in 1984. Mr. Braud testified he has no space set aside for him at Mr. Hopping's office and works sporadic hours, depending on the individual project. Ms. Cash testified at the investigative hearing, "I always felt that I was more of a consultant than an employee. To me ... being a regular employee [means] taking out social security and things like that. I kept my own hours. I'm basically self-employed."
An employee (servant) is a person who lets, hires or engages his services to another to be employed at any work, commerce or occupation whatever for the benefit of the other for a certain price, or upon certain conditions. La.C.C. art. 163; Vining v. Bardwell, 482 So.2d 685 (La.App. 1st Cir.1985), writ denied, 487 So.2d 439 (La. 1986).
In order to meet the requirements of La.C.C. art. 163, the single most important factor to consider in deciding whether the employer-employee relationship exists is the right of the employer to control the work of the employee. Roberts v. State, Through the Louisiana Health and Human Resources Administration, 404 So.2d 1221 (La.1981). The supreme court quoted *755 Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968), at page 1225 as follows:
It is the right of control of the time and physical activities in the other party and the existence of a close relationship between the parties which determine that one is a servant.
We further stated:
`Servant' must be interpreted as that particular kind of agent who has a very close economic relation to, and is subject to very close control by the principal. A servant is one who offers his personal services for a price. He is an integral part of his employer's business and must submit to the control of his physical conduct as well as of his time.
The factors used to determine the right to control are selection and engagement, payment of wages, power of dismissal, and power of control. Varnado v. Sanders, 477 So.2d 1205 (La.App. 1st Cir. 1985), writ denied, 481 So.2d 630 (La.1986). We feel Mr. Hopping did not exercise such degree of control over Mr. Braud or Ms. Cash so as to constitute an employer-employee relationship. We therefore agree with the Commission's decision that neither Mr. Braud nor Ms. Cash were regular employees of Mr. Hopping and conclude that its findings of fact were not manifestly erroneous. Accordingly, the Commission's legal conclusion that Mr. Hopping did not have a regular employee under LSA-R.S. 37:1964(C) is legally correct.

UNLAWFUL PROCEDURE
LSA-R.S. 49:964(G) of the Louisiana Administrative Procedure Act provides:
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
Mr. Hopping claims the Commission used an unlawful procedure in that the Commission had no authority to issue subpoenas for an investigative hearing and that Mr. Hopping was denied his right of discovery by the Commission's failure to respond to his interrogatories and request for production of documents.
LSA-R.S. 49:956(5) provides that in adjudication proceedings "[a]ny agency or its subordinate presiding officer shall have power to sign and issue subpoenas in the name of the agency requiring attendance and giving of testimony by witnesses and the production of books, papers, and other documentary evidence." Former LSA-R.S. 37:1961(F) [now redesignated as LSA-R.S. 3:3801(F)] authorizes the Commission
to adopt such rules and regulations as are necessary to enforce the provisions of this Chapter and to carry out the intent of the laws contained therein, including, but not limited to, rules and regulations for the following purposes:
* * * * * *
(4) To hold hearings and to conduct investigations.
(5) To do all things necessary to prevent fraudulent practices by persons engaged in the professions and occupations regulated by the commission.
The Commission's Rules and Regulations, which were entered in the record, authorize the Director of the Commission to sign a subpoena or order the issuance of a subpoena duces tecum at an investigative hearing. Rule 2.6 does not require the *756 Director to sign the subpoenas but merely authorizes him to do so. The subpoenas issued for the investigative hearing in this case were signed by a hearing officer, who has the authority to preside at all investigative hearings of the Commission under Rule 2.3, and attorney for the Commission. The subpoenas were issued "in the name of the Louisiana Horticulture Commission." However, the subpoenas' assertions that they were issued "under the authority of the Louisiana Revised Statutes Title 49, Section 956(5)(6)" are incorrect, since that statute only governs adjudication proceedings.
Administrative proceedings are not ordinarily governed by the strict rules of judicial proceedings. The key to pleading and procedure in that administrative process is the opportunity to prepare. Generally inadequacies in pleading and notice may be cured if the record establishes a full hearing was had after proper preparation. White v. Louisiana Public Service Commission, 259 La. 363, 250 So.2d 368 (1971). Mr. Hopping was provided notice of the nature of the investigation and a full hearing. If the evidence or testimony tended to incriminate him, he was afforded the opportunity to appear as a witness, request subpoenas for additional witnesses, or examine or cross-examine the witnesses under Rule 2.5. We conclude Mr. Hopping's rights were not prejudiced by the hearing officer's signature on the subpoenas duces tecum for the investigative hearing.
As for the Commission's objections to the interrogatories and request for production, LSA-R.S. 49:956(7) provides that "[a]n agency having power to conduct adjudication proceedings in accordance with this Chapter may adopt rules providing for discovery to the extent and in the manner appropriate to its proceedings." No rules directly pertaining to pre-hearing discovery have been adopted by the Commission. The purpose of the investigative hearing is to establish a factual record upon which to determine if a violation of law has occurred. As a result of such investigations, the Commission may initiate adjudicatory proceedings against persons engaged in any regulated profession. Rule 2.14 of the Rules and Regulations of the Louisiana Department of Agriculture Horticulture Commission. The trial court concluded that there was no showing as to what would be proven by the Commission's compliance in this matter. We agree that pre-hearing discovery would accomplish no further objective than the informal nature of the investigative hearing. Plaintiff's argument in this regard thus has no merit.

PENALTY AND CONSTITUTIONALITY
Mr. Hopping further complains of the cease and desist order issued by the Commission. He was ordered
to cease and desist from rendering landscape architectural services and from advertising in any manner whatsoever that he performs landscape design and to remove from his letterhead any reference to landscape design until such time as he is licensed as a landscape architect or until he has a regular employee who is a licensed landscape architect.
Rule 2.19 provides that "[u]pon determination of violation of Law or Rules and Regulations, the Commission may issue a cease and desist order describing with particularity the violative action and ordering the immediate cessation of said violative action." The conditions imposed in the cease and desist order are not unduly burdensome or oppressive. We decline to overturn a decision under this express grant of authority absent a finding that the Commission's action was arbitrary or capricious.
Finally, Mr. Hopping claims then LSA-R.S. 37:1964(C) and (D) and 37:1968(E) and (F) are unconstitutionally vague. He testified at the adjudicatory hearing that when he "first was approached about taking this job, I made it perfectly clear that I was not a landscape architect." He also testified he was "aware of the laws here" and did not foresee a problem because of his "ongoing relationship with Chris Braud."
A law is fatally vague and offends due process when it denies a person of ordinary intelligence a reasonable opportunity *757 to know what action is prohibited so that he may act accordingly. Laws regulating business behavior are held to a lesser standard of "definiteness" than statutes imposing criminal penalties. Carlin Communications, Inc. v. South Central Bell Telephone Co., 461 So.2d 1208, 1214 (La. App. 4th Cir.1984). Mr. Hopping realized that one practicing landscape architecture must have a license and that such a professional would be required in this case. His challenge to these statutes on the ground of vagueness must fail.
For the above and foregoing reasons, the judgment of the trial court in favor of the Horticulture Commission of Louisiana and against Michael Hopping is affirmed. Costs of this appeal are to be paid by plaintiff-appellant.
AFFIRMED.
LANIER, J., dissents and assigns reasons.
LANIER, Judge, dissenting.
The majority holds that an independent contractor is not a "regular employee" for purposes of La.R.S. 37:1964(C).[1] This holding is based on the erroneous legal conclusion that no employer-employee relationship exists between an employer and an independent contractor and on the erroneous legal conclusion that La.C.C. art. 163 does not apply to an independent contractor. The majority also has failed to consider the legislative history of La.R.S. 37:1964(C) in reaching its erroneous result.
The Louisiana Civil Code provides for the employer-employee relationship in Book I (Of Persons), Title VI (Of Master and Servant). La.C.C. arts. 162, 163 and 164 provide as follows:
Art. 162. There is only one class of servants in this State, to wit: Free servants.
Art. 163. Free servants are in general all free persons who let, hire or engage their services to another in this State, to be employed therein at any work, commerce or occupation whatever for the benefit of him who has contracted with them, for a certain price or retribution, or upon certain conditions.
Art. 164. There are three kinds of free servants in this State, to wit:
1. Those who only hire out their services by the day, week, month or year, in consideration of certain wages; the rules which fix the extent and limits of those contracts are established in the title: Of Letting and Hiring.

2. Those who engage to serve for a fixed time for a certain consideration, and who are therefore considered not as having hired out but as having sold their services.
3. Apprentices, that is, those who engage to serve any one, in order to learn some art, trade or profession.
Thus, a servant (employee) for purposes of our Civil Code is any person who lets, hires or engages his services to another to be employed at any work, commerce or occupation whatever for the benefit of him (employer) who has contracted with the servant. This definition in La.C.C. art. 163 clearly includes independent contractors, as well as any other type of employee. La. C.C. art. 164(1)[2] provides that employment contracts of persons who hire out their services for wages are controlled by the Civil Code rules of lease. A lease of labor is a synallagmatic contract based on mutual consent by which one party (the servant or employee) gives to the other (master or employer) his labor (services) at a fixed price. La.C.C. arts. 2669, 2670, 2673 and 2675. La.C.C. art. 2745 provides as follows:
Labor may be let out in three ways:
1. Laborers may hire their services to another person.

*758 2. Carriers and watermen hire out their services for the conveyance either of persons or of goods and merchandise.
3. Workmen hire out their labor or industry to make buildings or other works.
Thus, for purposes of the employer-employee contractual relationship, it is irrelevant whether the employee-servant is an independent contractor or a nonindependent contractor. In either situation, the contractual relationship is governed by the same rules.
Independent contractor status only becomes significant for purposes of tort and worker's compensation liability. La.C.C. art. 176 provides as follows:
The master is answerable for the offenses and quasi -offenses committed by his servants, according to the rules which are explained under the title: Of quasi-contracts, and of offenses and quasi-offenses.

La.C.C. art. 2320 provides, in pertinent part, as follows:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
....
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.
The Louisiana jurisprudence has not spelled out what is meant by "when the masters or employers ... might have prevented the act which caused the damage." Instead we borrowed the concepts of respondeat superior and independent contractor from the common law. In Comment, The Employer and the Torts of his Independent Contractor in Louisiana, 21 Tul.L.Rev. 619, 619-620 (1947), appears the following:
In 1826 there developed from the doctrine of respondeat superior the rule that the master would not be responsible for the injuries caused by his `servant' if the master `had no control' of the actions of his servant. From this exception to the general rule of the master's vicarious liability for the acts of his servants has since developed the general rule that the employer is not responsible for the acts of his independent contractor. This comment will deal with this common law development as it has been treated in the jurisprudence of Louisiana.
Nature of the Relationship
Both servant and independent contractor are engaged in the performance of an employment for the benefit of the employer. However, the freedom from control which the independent contractor enjoys in the pursuance of his employment takes him out of the class of a servant or agent and thus relieves the employer from liability for his acts.
[Underscoring added.] [Footnotes deleted.]
In Smith v. Zellerbach, 486 So.2d 798, 801 (La.App. 1st Cir.1986), writ denied, 489 So.2d 246 (La.1986), the employer-independent contractor relationship is defined as follows:
It is now accepted law that the relationship of principal and independent contractor exists when the following conditions are met:
1. There is a valid contract between the parties;
2. The work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it;
3. The contract calls for specific piecework as a unit to be done according to the independent contractor's own methods without being subject to the control and direction of the principal, except as to the result of the services to be rendered;
4. There is a specific price for the overall undertaking; and
5. Specific time or duration is agreed upon and not subject to termination at the will of either side without liability for breach.
*759 If an employment relationship does not meet these criteria, the employer is vicariously liable for the torts of his employee. However, an independent contractor is still an employee (servant) of an employer (master); the independent contractor's distinction is that he is an employee (servant) for whom the employer (master) has no vicarious tort liability.
For purposes of worker's compensation, an independent contractor is statutorily defined and excluded from coverage. In La. R.S. 23:1031, the basic right of an employee to worker's compensation coverage is set forth as follows:
If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
La.R.S. 23:1021(6) defines an independent contractor for worker's compensation purposes as follows:
`Independent contractor' means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the worktime of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.
[Underscoring added.]
Pursuant to La.R.S. 37:1964(C), Michael Hopping was prohibited from receiving fees for landscape architect work unless (1) he held a valid landscape architect license, which he did not, (2) he had a regular employee who held a valid landscape architect license, or (3) he was employed by or worked under the direct supervision of a person who had a valid landscape architect license, which he did not. The record shows that Hopping employed Chris Braud and Cynthia Cash, both of whom had valid landscape architect licenses. Hopping paid Braud for various projects the sums of $34,645.06 in 1981, $36,595.96 in 1982, $45,262 in 1983 and $21,346.72 in 1984. The trial court found as a fact that Braud was an independent contractor. I believe this finding to be correct. However, independent contractor status is not controlling for interpreting what is a "regular employee" for purposes of La.R.S. 37:1964(C). As previously noted, as a matter of law, an independent contractor is an employee (servant) for contractual purposes. Braud, as an independent contractor, consented to give his services to Hopping for a fixed price. An independent contractor qualifies as a servant (employee) under La.C.C. art. 163 because he lets, hires or engages his services to another to be employed at any work, commerce or occupation for the benefit of his employer. La.R.S. 37:1964(C) does not purport to relate to tort liability or worker's compensation. Therefore, the concept of independent contractor, which is significant in tort and worker's compensation cases, has no relevance, and the term "employee" must be interpreted as being used in a contractual sense. In a contractual sense, independent contractors and nonindependent contractors are employees (servants), and the distinction between the two is meaningless.
The majority has adopted, as its own, the Commission's factual finding that "Mr. Hopping contracted with Mr. Chris Braud and Ms. Cynthia Cash to provide the landscape architectural services" for the Iberville courthouse building project. [Emphasis added.] However, the majority then concludes there was no employer-employee relationship between Hopping and Braud. If this contract is not between an employer and an employee (an employment contract), what type of contract is it? Employment contracts are nominate contracts controlled by the Civil Code provisions heretofore set forth. Is a contract between an employer and an independent contractor an innominate contract which is not controlled by the Civil Code provisions which control employment *760 contracts? The majority opinion does not answer these questions. The implications of the majority holdings could have serious implications for future litigation. I would hold there was an employment contract (an employer-employee relationship or master servant relationship) between Hopping and Braud. I would further hold that, although Braud was the type of employee (servant) for whom Hopping was not vicariously liable in tort or to whom Hopping was not liable for worker's compensation, nevertheless, he was an employee for purposes of the contractual relationship between the parties and for purposes of La. R.S. 37:1964(C).
The majority's opinion states that "[i]n order to meet the requirements of La.C.C. art. 163, the single most important factor to consider in deciding whether the employer-employee relationship exists is the right of the employer to control the work of the employee." Control is the most important factor to consider in determining if an employee qualifies as an independent contractor for tort and worker's compensation purposes. Although control is a factor in determining whether an employment contract exists, the essential elements of an employment contract (employer-employee relationship) are (1) mutual consent, (2) giving of services (labor), and (3) a fixed price. La. C.C. arts. 163, 164, 2669, 2670, 2673 and 2675; Vining v. Bardwell, 482 So.2d 685 (La.App. 1st Cir.1985), writ denied, 487 So.2d 439 (La.1986).
The majority relies on Roberts v. State, Louisiana Health and Human Resources Administration, 404 So.2d 1221 (La.1981) and Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968) as authority for their holdings. This reliance is misplaced. Blanchard is a suit for damages in tort wherein the plaintiff was injured by the negligence of Ogima who was alleged to be an employee of Russo. The trial court found Ogima was an independent contractor and dismissed the suit against Russo. The court of appeal affirmed but held an agency relationship existed between Russo and Ogima, but that since Ogima deviated from his agency Russo was not liable. The Louisiana Supreme Court affirmed by ruling that Russo's liability was not controlled by agency (mandate) principles but was controlled by the doctrine of respondeat superior and found Ogima was an independent contractor and not a servant of Russo for purposes of La.C.C. art. 2320.[3] Part of the methodology used by the Court to reach this conclusion is set forth in Blanchard, 215 So.2d at 907, as follows:
The particular consideration for this court in the instant case is properly stated as follows:

*761 Granting that the particular nature of the employment of selling automobiles may require some consideration in application of the rules to particular fact situations, it can still be safely said that the liability of an automobile dealer for the negligent operation of an automobile by a salesman is to be determined by the general principles governing vicarious liability of an employer for the acts of an employee. Thus, conceding the driver's negligence, the ordinary line of inquiry is: (1) Was the driver acting in any employment relationship for the defendant? (2) If so, was the relationship that of master and servant or contractee and independent contractor? [Underscoring added.]
Roberts is a suit for damages in tort asserting the plaintiff was injured when a blind operator of a concession stand owned by the State of Louisiana bumped into him and caused him to fall. The trial court found no employer-employee relationship between the state and the blind operator and denied recovery against the state. The court of appeals affirmed on other grounds. The Louisiana Supreme Court reviewed the employer-employee relationship for purposes of La.C.C. art. 2320 and affirmed with the following rationale:
La.Civ.Code art. 2320 provides the basis for holding an employer liable for the negligent acts of his employees: `Masters and employers are answerable for damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.' To come within the scope of art. 2320, the plaintiff must show the existence of an employer-employee relationship. In evaluating the sufficiency of such proof, courts have been mindful that, by its nature, vicarious liability mandates strict construction....
The definition of an employee is set forth in La.Civ.Code art. 163:
Free servants are in general all free persons who let, hire, or engage their services to another in this state, to be employed therein at any work, commerce or occupation whatever for the benefit of him who has contracted with them, for a certain price or retribution or upon certain conditions.
The single, most important factor to consider in deciding whether the employer-employee relationship exists for the purposes of art. 2320 is the right of the employer to control the work of the employee.
....
Accordingly, we conclude that under the general principles of the master-servant doctrine as applied to the relationship between the state and Michael Burson in this case, the state was not the employer of Burson at the time of the accident and therefore is not vicariously liable for his alleged negligent conduct.
[Underscoring added.]
Roberts, 404 So.2d at 1225, 1226.
The only case cited by the majority on this issue, which is not a tort or a worker's compensation case,[4] is Vining v. Bardwell. In Vining, the plaintiff sued a trucking company and an independent trucker for payment for truck driving services (among other things). The trial court found there was a contractual relationship between the plaintiff and the trucking company and rendered judgment in favor of the plaintiff. The suit against the independent trucker was dismissed. On appeal, the trucking company contended it had no employment relationship with the plaintiff. This court observed that the three essential elements of an employment contract were (1) the thing (labor), (2) the price and (3) the consent. Evidentiary factors, which could be considered to determine the existence of an employment contract, were (1) selection and engagement, (2) payment of wages, (3) power of dismissal and (4) power of control. After reviewing the evidence, this court concluded that the trucking company did not consent to the plaintiff being its employee and ruled the trial court's factual *762 finding to the contrary was clearly wrong. We observed in Vining, 482 So.2d at 693, n. 4 that, since there was no employment contract between the plaintiff and the trucking company, it was unnecessary to determine what type of contract it was. The instant case, like Vining, is not a tort case or a worker's compensation case. The Vining method of analyzing the legal relations between Hopping and Braud should have been followed by the majority. Instead, the majority committed legal error by using the Blanchard-Roberts type of analysis which is used to determine the liability of an employer for tort and worker's compensation.
Determining the meaning of "regular employee" is a question of statutory construction or interpretation for which there are various rules. See, for example, the rules set forth in Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984). One of the most important rules is that a statute should be given the meaning that the lawmakers intended. The legislative history of a statute is a very useful way to ascertain the meaning of a statute.
The legislative history of La.R.S. 37:1964(C) indicates that the majority's construction of "regular employee" is too restrictive. La.R.S. 37:1964(C) in its present form was enacted by Act 621 of 1981, effective January 1, 1982. Prior to that time, the substance of La.R.S. 37:1964(C) was contained in La.R.S. 37:1969(2), which provided as follows:
No person shall receive fees, directly or indirectly, for services rendered in the conduct of any of the professional services listed under R.S. 37:1961 without having first obtained a license or permit from the commission, or have regularly employed a full time licensed agent at each place of business during the hours business is conducted, for the purpose of exercising the direct supervision of the professional service for which the license or permit is issued.
[Underscoring added.]
The corresponding pertinent provision in La.R.S. 37:1964(C) merely requires that the person charging the fee "has a regular employee who holds a valid ... license." Several significant changes were made. First, the word "agent" was changed to "employee." An agent (mandatary) is a person who has been authorized by another to transact affairs for the other in the other's name. La.C.C. art. 2985. An employee is a person who has an employment contract with another but does not conduct affairs in the name of the other. As indicated in Blanchard v. Ogima, 215 So.2d at 906-907, an agent can be an independent contractor or a nonindependent contractor. Second, the change omits the requirement of "full time" status; this indicates that the "regular employee" may be part-time. Third, the requirement that the license holder be "at each place of business during the hours business is conducted" to exercise "direct supervision of the professional service" has been deleted. This indicates that the professional service can be done by the "regular employee" at a place other than the employer's place of business and/or at a time other than the employer's business hours. Part-time employment at times different from the employer's normal working hours and at a place other than the employer's business place is consistent with the work done by an independent contractor.
Another rule of statutory construction applicable, when the meaning of a statute is not clear, is to consider the reason and spirit of the statute or the cause which induced its enactment. The obvious purpose of La.R.S. 37:1964(C) is to prohibit persons in the regulated occupations from performing work for which they are not licensed or qualified. The particular occupation in question is thereby regulated because certain criteria must be met to become licensed. In this manner, the public is protected from those persons who do not possess the skills necessary to properly engage in the regulated occupation. However, it is equally obvious that there must be occasions when landscape contractors and landscape architects work together on a project. In such a situation, pursuant to La.R.S. 37:1964(C), the landscape contractor can collect the fee for a project (1) if he has a landscape architect as a "regular *763 employee," or (2) if he is employed[5] by or worked under the direct supervision of a licensed landscape architect.
The Commission held that Hopping violated La.R.S. 37:1964(C) "when he received four payments for architectural services... without having in his employ a regular employee who held a valid landscape architect license." During the period of 1981 through 1984, Braud was employed by Hopping and paid, on the average, over $30,000 per year. This is certainly "regular" employment. The landscape plan for the Iberville courthouse project was prepared by Braud and submitted for the project under Braud's seal. What difference does it make to the purpose of the statute whether Braud was an independent contractor or a nonindependent contractor? Independent contractor status is not relevant to the purpose of the statute as long as Braud does the required landscape architectural work and Hopping does the required landscape contracting work.
When the meaning of a statute is not clear, it should be construed in a way that gives it a reasonable and practical effect. The majority's holding means that a landscape contractor can only collect a fee for a project if he regularly employs a nonindependent contractor landscape architect; if the landscape contractor regularly employs an independent contractor landscape architect, he cannot collect the fee. Such a ruling is certainly beneficial to nonindependent contractor landscape architects. Why should the independent contractor landscape architects be excluded from this type of employment; why should the nonindependent contractor landscape architect benefit from it? It would seem that a landscape architect would have to achieve a certain degree of proficiency to operate economically as an independent contractor. It would also seem that prior to that time he would be a nonindependent contractor learning his trade and increasing his skills. I do not believe that it would be in the public interest that the type of employment here at issue should be reserved to those who may be less proficient to the exclusion of those who may be more proficient.
Accordingly, I conclude that Braud was a "regular employee" of Hopping for purposes of La.R.S. 37:1964(A) and dissent from the majority opinion holding to the contrary.
NOTES
[1] La.R.S. 37:1964(C) has been redesignated as La.R.S. 3:3804(C) by Act 120 of 1985.
[2] La.C.C. art. 164(2) and (3) pertain to indentured servants and apprentices. T. Tucker, Sources of Louisiana's Law of Persons: Blackstone, Domat, and the French Codes, 44 Tul.L. Rev. 264 (1970); Note, Master and Servant Employment ContractsLetting and Hiring of ServicesSale of ServicesArticles 164, 167, Louisiana Civil Code of 1870, 13 Tul.L.Rev. 467 (1939).
[3] In Blanchard, 215 So.2d at 904-905, the following observations were made:

The Anglo-American or common law doctrine comparable to our master-servant doctrine is labeled `respondeat superior'. Although there was the foundation within the civilian law for development of our own theory of vicarious liability (La.Civ.Code Arts. 2315-2320), our jurisprudence has drawn freely upon the common law to the extent that it is difficult to differentiate the civilian and common law theories. Both civilian and common law were and are very restrictive in extending responsibility for the acts of others. Our Article 2320 restricts this liability to `masters and employers for * * * their servants and overseers * * * ` when they `* * * might have prevented the act which caused the damage, and have not done it'. Louisiana jurisprudence has not interpreted this restriction literally, and the demands of modern commerce and the needs of society would not permit such a stringent and severe limitation of the liability of a master for his servant. However, by inquiring into the overall relationship of the parties and the element of control, our jurisprudence has established reasonable definitions and limitations of vicarious liability to replace the literal codal restriction which has fallen into desuetude.... It is the right of control of the time and physical activities in the other party and the existence of a close relationship between the parties which determine that one is a servant. However, the Louisiana courts as well as the commentaries have upon occasion overlooked the elements of control and relationship and have used interchangeably and without distinction `principal and agent' (`principal-mandatary') and `master and servant'.4
4 For a comparison of cases loosely using agency terms to define the master-servant relationship necessary to impose liability under Louisiana Civil Code Article 2320, see Hart v. Hardgrave, 103 So.2d 910 (La.App. 2nd Cir. 1958); ...
[Underscoring added.] [Two footnotes omitted.]
[4] The case of Varnado v. Sanders, 477 So.2d 1205 (La.App. 1st Cir.1985), writ denied, 481 So.2d 630 (La.1986), also cited by the majority, is a tort and worker's compensation suit.
[5] La.R.S. 37:1964(C) provides that Hopping could collect the project fees if he was employed by a person with a valid landscape architect's license. If the majority's holding is followed in interpreting this portion of the statute, that would mean Hopping could collect the fee if he were employed by the landscape architect in a nonindependent contractor status, but he could not collect the fee if he were employed as an independent contractor. Query: If Hopping were in a nonindependent contractor status, why would the fee go to him anyway; it would seem that the employer would have the fee sent to himself.